IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 11, 2017 Session

## DAVID IVY v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 01-12388     James C. Beasley, Jr., Judge**

---

### No. W2016-02454-CCA-R3-ECN

---

The Petitioner, David Ivy, appeals the Shelby County Criminal Court's denial of his petition for a writ of error coram nobis, seeking relief from his conviction of first degree premeditated murder and resulting sentence of death. On appeal, the Petitioner contends that the coram nobis court erred by dismissing his petition, by denying his Rule 36.1 motion to correct an illegal sentence, and by denying his writ of error audita querela. In addition, he asks that this court advise him as to the correct pleading to file in order to challenge his death sentence. Based upon the oral arguments, the record, and the parties' briefs, we conclude that the coram nobis court did not err by denying relief, and we decline to provide an advisory opinion regarding future requests for relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Kelley J. Henry, Supervisory Assistant Federal Public Defender, and Amy D. Harwell, Assistant Federal Public Defender, Nashville, Tennessee, for the appellant, David Ivy.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Stephen P. Jones, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

In June 2000, the Petitioner was released from prison and placed on parole. David Ivy v. State, No. W2010-01844-CCA-R3-PD, 2012 WL 6681905, at *1 (Tenn. Crim. App. at Jackson, Dec. 21, 2012). Subsequently, he began dating the victim, LaKisha

Thomas.  Id.  Their relationship was "marked by Ivy's violence against Thomas," and the victim obtained an order of protection against the Petitioner on June 6, 2001.  Id. at *2.  Two days later, the Petitioner ran up to the victim while she was sitting in her car and shot her five times, killing her.  Id.  In 2003, a Shelby County Criminal Court Jury convicted the Petitioner of first degree premeditated murder and sentenced him to death.  State v. Ivy, 188 S.W.3d 132, 138-39 (Tenn. 2006).

In 2012, the Petitioner filed a petition for post-conviction relief claiming, in pertinent part, that trial counsel were ineffective during the penalty phase of his trial by failing to have him evaluated by a mental health professional.  David Ivy, No. W2010-01844-CCA-R3-PD, 2012 WL 6681905, at *26.  This court found that while counsel were deficient, the Petitioner failed to demonstrate prejudice.  Id. at 44-46.  On May 28, 2015, the Petitioner filed a petition for a writ of error coram nobis "and/or other relief," which is the basis for this appeal, asserting that he was intellectually disabled and, therefore, ineligible for the death penalty pursuant to Atkins v. Virginia, 536 U.S. 304 (2002).  In support of his claim, the Petitioner attached a 1984 mental health report from the Memphis School System.  According to the report, the then twelve-year-old Petitioner's I.Q. score on the WISC-R was 73, "placing him in the borderline range of intelligence."  The report stated that additional testing showed the Petitioner, who was in the sixth grade, exhibited "deficits" in reading, math, and written language and was reading on just the third-grade level.  The report concluded that the Petitioner's "[i]ntellectual functioning is more than two standard deviations below the mean, academic achievement is at or below the fourth percentile in Reading Comprehension, Reading Mechanics and Written Language and adaptive behavior is not significantly impaired."

The State responded to the petition, arguing that it was barred by the one-year statute of limitations.  On May 11, 2016, the Petitioner filed additional argument in support of his petition, also seeking relief pursuant to Tennessee Rule of Criminal Procedure 36.1 and a petition for writ of audita querela.

The coram nobis court denied relief without a hearing.  First, the court concluded that relief was not available to the Petitioner for his intellectual disability issue due to our supreme court's ruling in Payne v. State, 493 S.W.3d 478, 480 (Tenn. 2016).  As to the motion for relief pursuant to Tennessee Rule of Criminal Procedure 36.1, the court determined that the Petitioner was not entitled to relief because his death sentence was authorized by statute.  The court noted that "changes in constitutional law render a sentence voidable, not illegal and void."  As to the audita querela claim, the court concluded that the writ was obsolete and, thus, could not provide relief.  The Petitioner challenges the rulings of the coram nobis court.

## II.  Analysis

A. Writ of Error Coram Nobis

The Petitioner "acknowledges that our supreme court's decision in Payne holds that coram nobis does not provide a procedural adjudication of an Atkins claim." He contends, though, that Payne was wrongly decided. In the alternative, he contends that this case is distinguishable from Payne. The State maintains on appeal that the petition was barred by the statute of limitations. The State also argues that Payne held that a defendant cannot raise an intellectual disability claim via a petition for a writ of error coram nobis and that this court is bound by that decision.

The writ of error coram nobis is codified in Tennessee Code Annotated section 40-26-105 and provides as follows:

> There is hereby made available to convicted defendants in criminal cases a proceeding in the nature of a writ of error coram nobis, to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except insofar as inconsistent herewith . . . . Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(a), (b). Generally, a decision whether to grant a writ of error coram nobis rests within the sound discretion of the trial court. See State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995).

The writ of error coram nobis is a post-conviction mechanism that has a long history in the common law and the State of Tennessee. See, e.g., State v. Vasques, 221 S.W.3d 514, 524-26 (Tenn. 2007). The writ "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999).

A writ of error coram nobis must be filed within one year after the judgment becomes final in the trial court. Tenn. Code Ann. § 27-7-103. Nevertheless, the statute of limitations may be tolled on due process grounds if a petition seeks relief based upon newly discovered evidence of actual innocence. Wilson v. State, 367 S.W.3d 229, 234 (Tenn. 2012). Our supreme court has stated that "[i]n determining whether tolling of the statute is proper, the court is required to balance the petitioner's interest in having a hearing with the interest of the State in preventing a claim that is stale and groundless."

Id. In general, "'before a state may terminate a claim for failure to comply with . . . statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner.'" Id. (quoting Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992)). Our supreme court described the three steps of the "Burford rule" as follows:

> "(1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are 'later-arising,' determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim."

Id. (quoting Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995)).

In Payne, the petitioner was sentenced to death in 1988 for two murders he committed in 1987. 493 S.W.3d at 480-81. In 1990, the Tennessee General Assembly passed legislation prohibiting a death sentence for a defendant with an intellecual disability at the time of the offense. On December 4, 2001, our supreme court held in Van Tran v. State, 66 S.W.3d 790, 812 (Tenn. 2001), that the federal and state constitutions prohibited the execution of individuals who were intellectually disabled. Id. at 480, 481. In 2002, the United States Supreme Court held in Atkins, 536 U.S. at 321, that the federal constitution prohibited the execution of intellectually disabled defendants. Id. at 481.

Ten years later, Payne sought coram nobis relief on the basis that his intellectual disability prohibited his death sentence. Id. at 483. In support of his claim, he submitted a psychologist's 2012 affidavit, opining that the petitioner's "'functional intelligence clearly is at or below 70.'" Id. at 482. The petitioner claimed that the opinion "was new scientific evidence establishing that 'he is actually innocent of capital murder and the death penalty.'" Id. at 483. In denying relief, our supreme court explained as follows:

> The evil that the coram nobis statute is aimed at remedying is a conviction based on materially incomplete or inaccurate information. It is not intended to provide convicted felons a second trial due to subsequent changes in the law. Here, the Petitioner is attempting to challenge his sentence of death based on changes in the law that occurred many years after his trial. A petition for writ of error coram nobis pursuant to Tennessee Code Annotated section 40-26-105(b) is not the appropriate procedural mechanism for pursuing the Petitioner's claim of intellecual disability. We

> hold that the Petitioner has failed to state a claim that is cognizable under the coram nobis statute.

Id. at 486.

Turning to the instant case, both the Petitioner and the State contend that Payne held that a defendant cannot raise an intellectual disability claim via a petition for a writ of error coram nobis. However, our supreme court actually found in Payne that a writ of error coram nobis was not the proper avenue for relief in that particular case because the petitioner was "attempting to challenge his sentence of death based on changes in the law that occurred many years after his trial." Id.; see David Keen v. State, No. W2016-02463-CCA-R3-ECN, 2017 WL 3475438 (Tenn. Crim. App. at Jackson, Aug. 11, 2017), perm. to app. filed, (Tenn. Oct. 9, 2017). Such is not the case here. The statutory and case law prohibiting the execution of the intellectually disabled was established before the Petitioner went to trial. Therefore, we do not think Payne is dispositive of this case.

That said, though, the Petitioner has failed to satisfy a crucial prerequisite to a proper petition for a writ of error coram nobis in that, unlike the petitioner in Payne, he did not allege in his petition and does not allege on appeal that he is presenting newly discovered evidence. In fact, he notes in his brief that his mental deficiencies were first recognized when he was a child, and he attached only a 1984 mental health report from the Memphis School System to his petition. Furthermore, the Petitioner's judgment became final in 2003, but he did not file his petition for a writ of error coram nobis until 2015. The Petitioner offered no explanation in his petition and has offered no explanation on appeal as to why the statute of limitations should be tolled. His petition was untimely by well over a decade, and, therefore, was barred by the statute of limitations. Accordingly, the coram nobis court properly dismissed the petition.

## B. Rule 36.1 Relief from an Illegal Sentence

The Petitioner argues that he is entitled to relief pursuant to Tennessee Rule of Criminal Procedure 36.1 because he is intellectually disabled and, thus, not eligible to be executed. In support of this argument, he cites Tennessee Code Annotated section 39-13-203(b), which prohibits capital punishment for defendants who are intellectually disabled, stating that "no defendant with intellectual disability at the time of committing first degree murder shall be sentenced to death."

Rule 36.1 permits a defendant to seek correction of an unexpired illegal sentence at any time. See State v. Brown, 479 S.W.3d 200, 211 (Tenn. 2015). "[A]n illegal sentence is one that is not authorized by the applicable statutes or that directly contravenes an applicable statute." Tenn. R. Crim. P. 36.1(a).

As the State correctly notes, the flaw in the Petitioner's argument is that his punishment was authorized by statute when it was imposed upon him and, thus, was not illegal. Moreover, neither at the time of the Petitioner's sentencing, nor when this present petition was filed, had he been found to be "intellectually disabled" as contemplated by the applicable statute.[1] Thus, at the time of sentencing, the Petitioner's sentence did not contravene any statute, and he is not eligible for relief under Rule 36.1.

## C. Writ of Audita Querela

Finally, the Petitioner argues that he is entitled to a writ of audita querela, which is "a common law writ affording 'relief to a judgment debtor against a judgment or execution because of some defense or discharge arising subsequent to the rendition of the judgment or the issue of the execution.'" Dwight Seaton v. State, No. E1999-01312-CCA-R3-CD, 2000 WL 1177462, at *3 (Tenn. Crim. App. at Knoxville, Aug. 21, 2000) (quoting United States v. Fonseca-Martinez, 36 F.3d 62, 64 (9th Cir. 1994) (citation omitted)). However, the writ is no longer available in Tennessee. As this court explained in James Dellinger v. State:

> The Tennessee Supreme Court has concluded that the writ of audita querela "is absolutely unknown and obsolete in the practice of this State." Marsh v. Haywood, 25 Tenn. 210, 1845 WL 1897, at *1 (Tenn. 1845). Furthermore, Tennessee Code Annotated section 27-8-102 (2000) reflects that the writ of audita querela is obsolete by providing that the statutory writ of certiorari lies "[i]nstead of audita querela[.]"

No. E2013-02094-CCA-R3-ECN, 2015 WL 4931576, at *13 (Tenn. Crim. App. at Knoxville, Aug. 18, 2015). Accordingly, we conclude that this claim is without merit.

We note that the Petitioner requests that we "identify an appropriate procedural vehicle" in which he can present his claim that he is ineligible for the death penalty due to his intellectual disability. However, this court cannot provide such an advisory opinion. See Nichols v. State, 90 S.W.3d 576, 607 (Tenn. 2002) (stating that this court erred by providing an advisory opinion).

## III. Conclusion

---

[1]Tennessee Code Annotated section 39-13-203(a) defines "intellectual disability" as "(1) Significantly subaverage general intellectual functioning as evidenced by a functional intelligence quotient (I.Q.) of seventy (70) or below; (2) Deficits in adaptive behavior; and (3) The intellectual disability must have been manifested during the developmental period, or by eighteen (18) years of age." We note that the Memphis School System report stated that the Petitioner's I.Q. was 73 and that his adaptive behavior was not significantly impaired.

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the coram nobis court.

                                        _____

                                        NORMA MCGEE OGLE, JUDGE